FILED

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

00 JUL -6

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| **WILLIE E. TATE, SR.** | ) | |
| PLAINTIFF, | ) | |
| VS. | ) | CV99-H-1319-S |
| **TRAVELERS INDEMNITY COMPANY OF AMERICA** | ) | |
| | ) | |
| DEFENDANT. | ) | |
| | ) | |

**ENTERED**

JUL - 6 2000

**MEMORANDUM OF DECISION**

The Court has before it the March 27, 2000 motion of defendant Travelers Indemnity Company of America ("Travelers") for summary judgment. Pursuant to the Court's March 30, 2000 order, the motion was deemed submitted, without oral argument, on April 27, 2000.

**I. Procedural History**

Plaintiff commenced this action on June 30, 1998 by filing a complaint in the Circuit Court of Jefferson County against Travelers Indemnity Company of America ("Travelers"), Nakia Deshan Gray ("Ms. Gray"), America's First Federal Credit Union ("First Federal"), and CUNA Mutual Insurance Society ("CUNA"). Only Counts Three and Four of plaintiff's complaint asserted

claims against Travelers.[1]  Upon motion of defendant Travelers, the state court severed for discovery and trial purposes the claims against Travelers stated in Counts Three and Four.  On May 28, 1999, Travelers removed the claims against it to federal court.[2]

On March 27, 2000, Travelers filed a motion for summary judgment and a brief in support thereof, attaching to the brief evidence in support of the motion.  Plaintiff filed a brief in opposition to defendant's motion on April 20, 2000, attaching his evidence thereto.  Defendant filed a brief in response on May 4, 2000.  As noted earlier, both parties submitted evidence in support of their respective briefs and/or motions.[3]  Pursuant to the Court's March 30, 2000 order, defendant's motion for summary judgment is now under submission.

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary

---

[1]Counts One and Two asserted claims against Gray; Count Five asserted a claim against First Federal; and Count Six asserted a claim against CUNA.

[2]Pursuant to this Court's July 1, 1999 Order, the case was restyled as Tate v. Travelers, clarifying that First Federal, CUNA, and Gray were no longer parties to the present action.

[3]Plaintiff filed the affidavits of Claretha Kennedy, Willie Tate, Sr., and Don Meadows with documents produced by Jim Burke Automotive attached thereto.  Defendant filed excerpts from the deposition of plaintiff Willie Tate.

judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. Id. at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial. Id. at 324.

The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. If the evidence is merely colorable,

or is not significantly probative, summary judgment may be granted. Id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. Fitzpatrick, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case.  <u>Fitzpatrick</u>, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  <u>Lewis v. Casey</u>, 518 U.S. 343, 358 (1996) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992)).

### III. Relevant Undisputed Facts

On or about November 11, 1997, plaintiff's son was involved in a motor vehicle accident.  The car driven by plaintiff's son

belonged to plaintiff, and plaintiff had a policy of insurance on the car with Nationwide Insurance Company. (See Tate Depo., p. 19-20). The other car involved in the accident was driven by Ms. Gray and was covered under a Travelers insurance policy. (See Tate Depo., p. 19-20). Plaintiff alleges that subsequent to the accident, Earl White visited his home on behalf of Travelers and spoke with plaintiff's daughter about the accident.[4] (See Tate

---

[4]Defendant bases much of his argument in support of summary judgment on a misreading or a mischaracterization of plaintiff's testimony regarding the timing of Earl White's visit to plaintiff's home. The relevant deposition testimony reads as follows:

> Q   How long after Earl came to your house was it before you took the car to Jim Burke?
>
> A   Howlong?
>
> Q   Yes.
>
> A   Before I took the car?
>
> Q   Yes, sir.
>
> A   About a week.
>
> A   A week before he came there.

(See Tate Depo., p. 54) (emphasis added). On the basis of this statement, defendant argues that plaintiff could not have relied on Mr. White's representations about having the car repaired because he took the car to Jim Burke Automotive a week before speaking with Mr. White. A further reading of the deposition, however, clarifies that plaintiff misunderstood the question or mis-spoke with regard to the timing of Mr. White's visit in relation to his taking the car to have it repaired. The testimony following the above statement reads:

6

Depo., p. 54). According to plaintiff's daughter, Mr. White looked at the car, and then asked that she tell her father that he could take the car "anywhere" to have it repaired. (Kennedy Aff. ¶ 4; Tate Depo., p. 22-23). A day or so later, plaintiff took the car to the Jim Burke Automotive Shop ("Jim Burke Automotive").[5] (Tate Depo., pp. 55-56). Thereafter, Mr. White called Jim Burke Automotive to request an estimate on plaintiff's car. (See Meadows Aff. ¶ 3). Upon receiving such estimate, Mr. White told Don Meadows, a Jim Burke Automotive employee, to proceed with the repairs. (Meadows Aff. ¶ 6). After the repairs were completed, the car was delivered to plaintiff. (See Tate Depo., p. 71; Meadows Aff. ¶ 15). However, after learning that

---

> Q   Okay. Then Earl White came by, and how long was it before the car went to Jim Burke?
>
> A   I think I took it the next day, that next evening.
>
> Q   So the day after Earl White came and looked at your car you took the car to Jim Burke?
>
> A   Yes, ma'am.

(See Tate Depo., pp. 54-55) (emphasis added). Clearly, plaintiff took his car to Jim Burke Automotive after speaking with Mr. White. Accordingly, the Court will disregard defendant's arguments regarding the timing of the visit between plaintiff and Mr. White. In any event, the timing issue ultimately proves irrelevant because plaintiff's claims fail on other grounds. (See Plaintiff's Arguments and Applicable Law, infra, pp.  ).

[5] Jim Burke Automotive is a direct repair shop for Travelers. (See Meadows Aff. ¶ 10).

Travelers had refused to pay for the repairs, Jim Burke Automotive requested that plaintiff return the car. (See Meadows Aff. ¶¶ 12, 15; Letter from Don Meadows to Mrs. Barker, stamp # 50, attached to Meadows' affidavit). The car was returned and held at Jim Burke Automotive until May 5, 1998, at which time payment was made by the lien holder on plaintiff's car.[6] (Meadows Aff. ¶ 16). The car was subsequently returned to plaintiff. (See Tate Depo., p. 43).

### IV. Plaintiff's Argument and Applicable Law

Plaintiff sets forth two claims against Travelers. First, plaintiff claims that Travelers was negligent in the manner in which it dealt with him and with Jim Burke Automotive regarding the repairs to his automobile.[7] (See Plaintiff's Complaint, dated

---

[6] Although Mr. Meadows stated in his affidavit that the "lien holder" paid for the repairs to plaintiff's car, it is unclear to whom he is referring. Plaintiff did testify that he ceased making payments on the car while it was undergoing repairs, so it is probable that the lien holder on the car seized it upon completion of the repairs. It is still nonetheless unclear who made payment to Jim Burke Automotive. Plaintiff testified that he was unaware of who paid for the car, but that his understanding was that someone had paid and that he owed nothing for the cost of repairs. (See Tate Depo., pp. 44-45).

[7] In Count Three of his complaint, plaintiff asserts that "Travelers was negligent in the manner in which it dealt with the Plaintiff and Jim Burke Buick." (Plaintiff's Complaint, dated 6/30/98, ¶ 19). While plaintiff does not specifically allege negligent handling of an insurance claim, he does refer in Count Three to a claim which was filed on his behalf against Travelers for repairs to be made to his car. Id. at ¶ 14. It is therefore unclear whether plaintiff is claiming negligence for the manner

6/30/98, ¶¶ 14-19). Second, plaintiff asserts that Travelers fraudulently misrepresented that it would pay for the cost of repairs to his automobile. (See id. at ¶ 22-25).

As a preliminary matter, the Court notes that both plaintiff and defendant focused much of their respective arguments on a wholly inapplicable rule of law. The rule relied upon by defendant and countered by plaintiff is that under Alabama law, a third party to a liability insurance contract cannot maintain a direct action against the insurer for the alleged liability of the insured unless the insurer has undertaken a new and independent obligation directly with that third party in an effort to negotiate settlement of the third party's claim. See Howton v. State Farm Automobile Ins. Co., 507 So. 2d 448, 450-51 (Ala. 1987). Although the parties focus on whether a new and independent obligation was undertaken on the part of Travelers, the initial inquiry should have been whether plaintiff was seeking to recover for the alleged liability of the defendant's insured, Ms. Gray. Indeed, a review of plaintiff's complaint reveals clearly that plaintiff is _not_ seeking to recover from

---

in which defendant handled the repairs to his car or negligence in the way defendant handled the insurance claim at issue. The Court will address both potential claims.

Travelers for the liability of its insured,[8] but instead for the alleged torts committed by defendant. Accordingly, the rule under Howton does not apply here. As the Alabama Supreme Court held, the rule against third party direct actions does not "stand for the proposition that a direct action against the insurer is barred where the insurer, acting independently of its insured, enters into a contract with, or commits a tort against, a third-party claimant. Howton, 507 So. 2d at 450.

Thus, the issue properly framed is simply whether plaintiff can maintain an action against Travelers for negligence or fraudulent misrepresentation. With regard to plaintiff's first claim,[9] defendant correctly notes that the negligent handling of an insurance claim is not recognized as a valid cause of action in Alabama. See Kervin v. Southern Guaranty Ins. Co., 667 So. 2d 704 (Ala. 1995). Thus, plaintiff's claim must fail to the extent he is pursuing such an action. To the extent he is asserting a claim for negligence based on the manner in which Travelers dealt with the repairs to his car, plaintiff must establish the

---

[8]Plaintiff does assert a claim against the insured in Counts One and Two of his complaint, but these counts do not involve Travelers and are not part of the present action.

[9]As previously noted, the Court is unclear as to whether plaintiff is asserting a claim for negligent handling of an insurance claim or for basic negligence in the manner in which defendant handled the repairs to his automobile.

10

existence of a duty on the part of defendant. Plaintiff argues that under Palomar Insurance Corp. v. Guthrie, 583 So. 2d 1304 (Ala. 1991), a duty can arise between a third party to an insurance contract and the insurer where the insurer voluntarily undertakes a duty to act.[10] While plaintiff is correct that a duty may arise in certain circumstances, defendant in the present case took no action sufficient to give rise to a legal duty. Because plaintiff has failed to establish the existence of a duty, plaintiff cannot maintain his negligence action.

Plaintiff's fraudulent misrepresentation claim must also fail. To establish a prima facie case of fraudulent misrepresentation, plaintiff must set forth evidence 1) that defendant made a misrepresentation concerning a material fact, 2) that plaintiff relied on the false representation, and 3) that actual injury resulted from the reliance. Spooner v. State Farm Mutual Automobile Ins. Co., 709 So. 2d 1157, 1160 (Ala. 1997) (citing Ala. Code § 6-5-101 (1975)); Crowder v. Memory Hill Gardens, Inc., 516 So. 2d 602 (Ala. 1987); International Resorts Inc. v. Lambert, 350 So. 2d 391 (Ala. 1997). While plaintiff arguably could satisfy the first two elements, plaintiff has

---

[10] In Palomar, the Court found that the insurer owed a duty to inform the insured that his policy would lapse where the insurer's customary practice was to provide premium renewal notices and notice by phone on the day payment was due. See Palomar, 583 So. 2d at 1306.

11

failed to show that he has suffered any actual damages as the result of defendants' alleged misrepresentation. Plaintiff argues that he was caused to suffer added expense, delay, and inconvenience, as well as emotional harm, as the result of defendants' alleged advice to take the car to Jim Burke Automotive. However, even if plaintiff had taken his car elsewhere for repairs, he still would have been without the use of his automobile and would have therefore sustained the same inconvenience and extra transportation expenses. Additionally, and more importantly, plaintiff was not charged for any of the repairs to his automobile. Plaintiff has simply failed to show that he suffered any actual damage as a result of defendant's alleged fraudulent misrepresentation. Accordingly, defendant is entitled to summary judgment with regard to plaintiff's misrepresentation claim.

### IV. Conclusion

In summary, the Court finds that no material issues of fact exist and that defendant Travelers is entitled to judgment as a matter of law as to all claims asserted by plaintiff. A separate order will be entered.

DONE this **6th** day of July, 2000.

_____
SENIOR UNITED STATES DISTRICT JUDGE